UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| CLARENCE BOUTTE, on behalf of himself and others similarly situated, | § § § | Civil Action No.: |
| Plaintiff, | § § | JURY TRIAL DEMANDED |
| v. | § § | |
| HUGHES, WATTERS & ASKANASE, L.L.P., | § § § § | |
| Defendant. | | |

# CLASS ACTION COMPLAINT

## Nature of Action

1. Clarence Boutte ("Plaintiff") brings this class action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, for the benefit of Texas consumers who have been the subject of debt collection efforts by Hughes, Watters & Askanase, L.L.P. ("Defendant").

2. Congress enacted the FDCPA in 1977 to "eliminate abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e), and in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which Congress found to have contributed "to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

3. As the Consumer Financial Protection Bureau ("CFPB")—the federal agency tasked with enforcing the FDCPA—explained, "[h]armful debt collection practices remain a significant concern today.

1

4. In fact, the CFPB receives more consumer complaints about debt collection practices than about any other issue."[1]

5. To combat this serious problem, the FDCPA requires debt collectors to send consumers "validation notices" containing certain information about their alleged debts and consumers' rights with respect to those debts. 15 U.S.C. § 1692g(a).

6. A debt collector must send this notice "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," unless the required information was "contained in the initial communication or the consumer has paid the debt." *Id.*, § 1692g(a).

7. As noted by the CFPB and the Federal Trade Commission, "this validation requirement was a 'significant feature' of the law that aimed to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" *Hernandez*, No. 14-15672, at 5 (quoting S. Rep. No. 95-382, at 4 (1977)).

8. This case centers on Defendant's failure to effectively provide the disclosures required by 15 U.S.C. § 1692g in its initial written communications to Texas consumers, or within five days thereafter.

## Parties

9. Plaintiff is a natural person who at all relevant times resided in Harris County, Texas.

10. Plaintiff is obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due, a creditor other than Defendant.

---

[1] *See* Brief for the CFPB as Amicus Curiae, Dkt. No. 14, p. 10, *Hernandez v. Williams, Zinman, & Parham, P.C.*, No. 14-15672 (9th Cir. Aug. 20, 2014), http://www.ftc.gov/system/files/documents/amicus_briefs/hernandez-v.williams-zinman-parham-p.c./140821briefhernandez1.pdf (last accessed January 4, 2019).

11. Plaintiff's obligation, or alleged obligation, owed or due, or asserted to be owed or due, arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes—namely, a personal loan (the "Debt").

12. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

13. Defendant is a limited liability company with its principal office in Harris County, Texas.

14. Defendant is an entity that at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

15. Upon information and belief, at the time Defendant attempted to collect the Debt from Plaintiff, the Debt was in default, or Defendant treated the Debt as if it were in default from the time that Defendant acquired it for collection.

16. Defendant uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, or to regularly collect or attempt to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

17. Defendant identified itself in written correspondence to Plaintiff as a debt collector.

18. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

**Jurisdiction and Venue**

19. This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

20.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), as the acts and transactions giving rise to Plaintiff's action occurred in this district, and as Defendant has its principal place of business, and transacts business, in this district.

## Factual Allegations

21.     On or about July 23, 2019, Defendant sent a written communication to Plaintiff in connection with the collection of the Debt.

22.     A true and correct copy of the July 23, 2019 communication to Plaintiff is attached as Exhibit A.

23.     Defendant's July 23, 2019 communication to Plaintiff was the first communication Plaintiff received from Defendant in connection with the collection of the Debt.

24.     Plaintiff did not receive any other communication from Defendant within five days of the July 23, 2019 communication.

25.     Near the top of the, July 23, 2019 communication advised Plaintiff in bold:

**THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A CONSUMER DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR SUCH PURPOSE.**

**NOTWITHSTANDING ANYTHING ELSE IN THIS LETTER YOU HAVE THE FOLLOWING RIGHTS: UNLESS WITHIN THIRTY (30) DAYS AFTER RECEIPT OF THIS NOTICE YOU DISPUTE THE VALIDITY OF THE DEBT, OR ANY PORTION THEREOF, THE DEBT WILL BE PRESUMED TO BE VALID. IF WITHIN SUCH TIME PERIOD YOU DISPUTE THE DEBT, OR ANY PORTION THEREOF, UPON REQUEST THE UNDERSIGNED WILL FURNISH YOU WITH VERIFICATION OF THE DEBT.**

**UPON YOUR WRITTEN REQUEST WITHIN SUCH THIRTY-DAY TIME PERIOD THE UNDERSIGNED WILL FURNISH YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.**

*Id*.

26. Defendant's July 23, 2019 communication then advised Plaintiff that Defendant represented United Community Credit Union concerning the Debt. *Id.*

27. Defendant's July 23, 2019 communication also advised Plaintiff:

2. Our Client has advised us that breaches of the payment and performance obligations under the Agreement have been committed, creating default under the terms of the Agreements:

**Agreement 1**

Our Client has informed us that the payoff on **Agreement 1** as of July 11, 2019 is $5,448.11.

Our Client has informed us that the amount that is past due on Agreement 1, as of June 30, 2019, is $5,185.48 plus attorney's fees ("Cure Amount"). **("Agreement 1")**

(the Cure Amounts and the Deficiency Amount are herein sometimes collectively referred to as the "Cure Amount")

3. Further, the Credit Union has incurred attorney's fees in connection with the enforcement of the Agreements and security instruments. As of July 23, 2019, the amount of attorney's fees owed was $250.00. *The amount of attorney's fees will increase if a lawsuit is filed.*

4. In order to cure the defaults referenced above, the Cure Amount must be paid by cashier's check or money order, payable to the Credit Union.

*****

5. If the Cure Amounts are not timely paid and delivered to our Client on or before 5:00 p.m. Central Standard Time on August 25, 2019, our Client, as its sole election, may accelerate the maturity of the Agreements (to the extent that same have not heretofore been accelerated), declare the entire balances and all other indebtedness owing under the Agreements due and payable without further demand, and/or pursue its rights and remedies under the Agreements and security instruments, including, without limitation, filing a lawsuit to recover the balance of indebtedness owing under the Agreements. In such instance, attorneys' fees and other sums may continue to accrue.

*See* Ex. A.

## Class Action Allegations

28. Plaintiff brings this action as a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of the following two classes:

### The Amount of the Debt Class

All persons (a) with a Texas address, (b) to whom Hughes, Watters & Askanase, L.L.P. mailed an initial debt collection communication not returned as undeliverable, (c) in connection with the collection of a consumer debt, (d) in the one year preceding the date of this complaint, (e) that requested or demanded more than one dollar figure related to the Debt without identifying which was the amount of the debt.

### The Debt Collector Class

All persons (a) with a Texas address, (b) to whom Hughes, Watters & Askanase, L.L.P. mailed an initial debt collection communication not returned as undeliverable, (c) in connection with the collection of a consumer debt, (d) in the one year preceding the date of this complaint, (e) that stated "[u]nless within thirty (30) days after receipt of this notice you dispute the validity of the debt, or any portion thereof, the debt will be presumed to be valid."

### The Writing Class

All persons (a) with a Texas address, (b) to whom Hughes, Watters & Askanase, L.L.P. mailed an initial debt collection communication not returned as undeliverable, (c) in connection with the collection of a consumer debt, (d) in the one year preceding the date of this complaint, (e) that stated "[i]f within such time period you dispute the debt, or any portion thereof, upon request the undersigned will furnish you with verification of the debt."

29. Excluded from the classes are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had controlling interests.

30. The classes satisfy Rule 23(a)(1) because, upon information and belief, they are so numerous that joinder of all members is impracticable.

31. The exact number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery.

32. The classes are ascertainable because they are defined by reference to objective criteria.

33. In addition, upon information and belief, the names and addresses of all members of the classes can be identified in business records maintained by Defendant.

34. The classes satisfy Rules 23(a)(2) and (3) because Plaintiff's claims are typical of the claims of the members of the classes.

35. To be sure, Plaintiff's claims and those of the members of the classes originate from the same standardized initial debt collection letter utilized by Defendant, and Plaintiff possesses the same interests and has suffered the same injuries as each member of the classes.

36. Plaintiff satisfies Rule 23(a)(4) because he will fairly and adequately protect the interests of the members of the classes and has retained counsel experienced and competent in class action litigation.

37. Plaintiff has no interests that are contrary to, or irrevocably conflict with, the members of the classes that he seeks to represent.

38. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since, upon information and belief, joinder of all members of the classes is impracticable.

39. Furthermore, as the damages suffered by individual members of the classes may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the classes to individually redress the wrongs done to them.

40. There will be no unusual difficulty in the management of this action as a class action.

41. Issues of law and fact common to the members of the classes predominate over any questions that may affect only individual members, in that Defendant has acted on grounds generally applicable to the classes.

42. Among the issues of law and fact common to the classes are:

   a. Defendant's violations of the FDCPA as alleged herein;

   b. whether Defendant is a debt collector as defined by the FDCPA;

   c. whether Defendant failed to make the disclosures required by 15 U.S.C. § 1692g(a)(1) with respect to the Amount of the Debt Class;

   d. whether Defendant failed to make the disclosures required by 15 U.S.C. § 1692g(a)(3) with respect to the Debt Collector Class;

   e. whether Defendant failed to make the disclosures required by 15 U.S.C. § 1692g(a)(4) with respect to the Writing Class;

   f. the availability of statutory penalties; and

   g. the availability of attorneys' fees and costs.

## Count I: Violation of The Fair Debt Collection Practices Act, 15 U.S.C. §1692g(a)(1)

43. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 42.

44. The FDCPA at 15 U.S.C. §1692g(a)(1) provides:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

*****

(3) the amount of the debt;

8

45. Defendant's July 23, 2019 communication did not disclose the amount of the Debt in a manner the least sophisticated consumer was likely to understand.

46. The July 23, 2019 letter informed Plaintiff that the payoff on Agreement 1 as of July 11, 2019 was $5,448.11. *See* Ex. A.

47. The July 23, 2019 letter also informed Plaintiff that the amount that was past due on Agreement 1, as of June 30, 2019, is $5,185.48 plus attorney's fees.

48. The letter defined this as the "Cure Amount." *Id*.

49. The July 23, 2019 letter then informed Plaintiff that the "Cure Amounts and the Deficiency Amount are herein sometimes collectively referred to as the 'Cure Amount.'" *Id*.

50. The July 23, 2019 did not define the term "Cure Amounts" or "Deficiency Amount." *Id*.

51. The July 23, 2019 letter further informed Plaintiff that the attorney's fees owed were $250 as of July 23, 2019. *Id*.

52. The July 23, 2019 then informed Plaintiff that in order to cure the defaults, he must pay the "Cure Amount." *Id*.

53. But the July 23, 2019 also advised Plaintiff that if the "Cure Amounts" were not timely paid, the creditor may take further action against Plaintiff.

54. As set forth above, one section of the July 23, 2019 letter informed Plaintiff that the "Cure Amount" was $5,185.48 plus attorney's fees while the same letter also referred to "Cure Amount" as the "Cure Amounts and the Deficiency Amount" without defining either of those terms.

55. As a result, the unsophisticated consumer is left to speculate as to whether the Amount of the Debt is:

9

      a. $5,448.11 – the payoff as of July 11, 2019;

      b. $5,185.48 plus an undefined amount of attorney's fees—the "Cure Amount" as of June 30, 2019;

      c. $5,435.48 ($5,185.48 plus $250 in attorney's fees)—the "Cure Amount" including attorney's fees as of July 23, 2019; or

      d. Some other amount comprised of either the "Cure Amounts" on its own, or the "Cure Amounts" plus the "Deficiency Amount," neither of which are defined in the letter.

56. As such, Defendant violated 15 U.S.C. §1692g(a)(1).

57. The harm suffered by Plaintiff is particularized in that the violative initial debt collection letter at issue was sent to him personally, regarded his personal alleged debt, and failed to effectively provide him statutorily mandated disclosures to which he was entitled.

58. Section 1692g furthers the purpose of protecting debtors from abusive debt collection activity by requiring a debt collector who solicits payment from a consumer to provide that consumer with a detailed validation notice, which allows a consumer to confirm that he owes the debt sought by the collector before paying it.

59. And the content of Defendant's July 23, 2019 communication created a material risk of harm to the concrete interest Congress was trying to protect in enacting the FDCPA.

60. Specifically, when a debt collector fails to disclose the amount of the debt clearly enough for the unsophisticated consumer to understand, the unsophisticated consumer will not know the amount that is alleged to be owed, and therefore may affect his decision-making regarding the Debt. *See, e.g., Zirogiannis v. Seterus, Inc.*, No. 15CV5884, 2016 WL 7410541, at *5-*6 (E.D.N.Y. Nov. 28, 2016) ("[A] debtor has an interest in receiving accurate information

regarding the amount of his debt, and courts analyzing Article III standing in the wake of *Spokeo* have held that a violation of the FDCPA is sufficient to establish a concrete harm.").

61. Here, upon reviewing the July 23, 2019 communication, Plaintiff was unsure and confused as to the amount of the Debt that Defendant was alleging that he owed.

62. In addition, Defendant's actions invaded a specific private right created by Congress, and the invasion of that right creates the risk of real harm.

### Count II: Violation of The Fair Debt Collection Practices Act, 15 U.S.C. §1692g(a)(3)

63. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 42.

64. The FDCPA at 15 U.S.C. §1692g(a)(3) provides:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

*****

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

65. Defendant's July 23, 2019 communication violated 15 U.S.C. § 1692g(a)(3) by failing to advise Plaintiff that unless he, within thirty days after receipt of the notice, disputed the validity of the Debt, or any portion thereof, the Debt would be assumed to be valid *by the debt collector*. *See*, *e.g.*, *Guerrero v. Absolute Collection Serv., Inc.*, No. 1:11–cv–02427–JEC–RGV, 2011 WL 8183860, at *4 (N.D. Ga. Oct. 6, 2011) ("Moreover, ACS's failure to limit its statement that any undisputed debt would be assumed valid to the debt collector violates the

notice requirements of § 1692g(a)(3) by making the least sophisticated consumer uncertain as to her rights.").

66. The harm suffered by Plaintiff is particularized in that the violative initial debt collection letter at issue was sent to him personally, regarded his personal alleged debt, and failed to effectively provide him statutorily mandated disclosures to which he was entitled.

67. Section 1692g furthers the purpose of protecting debtors from abusive debt collection activity by requiring a debt collector who solicits payment from a consumer to provide that consumer with a detailed validation notice, which allows a consumer to confirm that he owes the debt sought by the collector before paying it.

68. And the content of Defendant's July 23, 2019 communication created a material risk of harm to the concrete interest Congress was trying to protect in enacting the FDCPA.

69. Specifically, when a debt collector fails to disclose the entity that will assume the debt valid, the unsophisticated consumer is left to assume that his debt will be determined to be valid by a court, credit reporting agency, or other entity of authority. *Galuska v. Collectors Training Inst. of Ill., Inc.*, No. 3:07–cv–2044, 2008 WL 2050809, at *5 (M.D. Pa. May 13, 2008) (holding that failure to include "by the debt collector" or words such as "we" or "this office" in the required disclosure would lead least sophisticated debtor to believe the debt would be assumed valid by some other entity).

70. Here, upon reviewing the July 23, 2019 communication, Plaintiff was unsure as to whom could assume the debt to be valid.

71. In addition, Defendant's actions invaded a specific private right created by Congress, and the invasion of that right creates the risk of real harm.

## Count III: Violation of The Fair Debt Collection Practices Act, 15 U.S.C. §1692g(a)(4)

72. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 42.

73. The FDCPA at 15 U.S.C. §1692g(a)(4) provides:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –

*****

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector.

74. Defendant's July 23, 2019 communication did not contain the complete disclosure required by 15 U.S.C. §1692g(a)(4), nor did Defendant provide such disclosure within five days thereafter.

75. Specifically, Defendant's July 23, 2019 communication violated 15 U.S.C. §1692g(a)(4) by failing to inform Plaintiff if he notifies Defendant *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, Defendant will obtain verification of the debt or a copy of a judgment against her and a copy of such verification or judgment will be mailed to the her by Defendant. *See, e.g., Osborn v. Ekpsz, LLC*, 821 F. Supp. 2d 859, 869 (S.D. Tex. 2011) ("The defendant's letter informed June Osborn that she could request verification of the alleged debt or information about the original creditor, but did not state that the request had to be in writing. The letter did not fully comply with the statutory requirement.").

76. The harm suffered by Plaintiff is particularized in that the violative initial debt collection letter at issue was sent to him personally, regarded his personal alleged debt, and failed to effectively provide him statutorily mandated disclosures to which he was entitled.

77. Section 1692g furthers the purpose of protecting debtors from abusive debt collection activity by requiring a debt collector who solicits payment from a consumer to provide that consumer with a detailed validation notice, which allows a consumer to confirm that he owes the debt sought by the collector before paying it.

78. And the content of Defendant's July 23, 2019 communication created a material risk of harm to the concrete interest Congress was trying to protect in enacting the FDCPA.

79. Specifically, Defendant's misstatement of the rights afforded by the FDCPA would cause the unsophisticated sophisticated consumer to understand, incorrectly, that validation of the debt could be obtained through an oral request, or by means other than in writing.

80. Such a misunderstanding could lead the unsophisticated consumer to waive or otherwise not properly vindicate her rights under the FDCPA.

81. Indeed, failing to dispute the debt in writing would cause a consumer to waive the important protections afforded by 15 U.S.C. § 1692g(b)—namely, that a debt collector cease contacting the consumer until the debt collector provides the consumer with verification of the alleged debt and/or the original creditor's name and address, as requested.

82. Without the information about the in-writing requirement, Plaintiff was placed at a materially greater risk of falling victim to abusive debt collection practices because he was unaware that certain protections that Congress afforded him through the FDCPA could only be triggered by a written dispute.

83. Here, upon reviewing the July 23, 2019 communication, Plaintiff was not aware that he need dispute the Debt in writing in order to obtain verification of the Debt.

84. In addition, Defendant's actions invaded a specific private right created by Congress, and the invasion of that right creates the risk of real harm.

WHEREFORE, Plaintiff respectfully requests relief and judgment as follows:

A. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Adjudging and declaring that Defendant violated 15 U.S.C. § 1692g(a)(1) and 15 U.S.C. § 1692g(a)(3)-(4);

C. Awarding Plaintiff and members of the classes statutory damages pursuant to 15 U.S.C. § 1692k;

D. Awarding members of the classes actual damages incurred, as applicable, pursuant to 15 U.S.C. § 1692k;

E. Awarding Plaintiff and members of the classes their reasonable costs and attorneys' fees incurred in this action, including expert fees, pursuant to 15 U.S.C. § 1692k and Rule 23 of the Federal Rules of Civil Procedure;

F. Awarding Plaintiff and the members of the classes any pre-judgment and post-judgment interest as may be allowed under the law; and

G. Awarding other and further relief as the Court may deem just and proper.

## Jury Demand

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable.

Dated:  September 9, 2019                     Respectfully submitted,


/s/ *Aaron D. Radbil*
Aaron D. Radbil
Texas Bar No. 24094090
Greenwald Davidson Radbil PLLC
401 Congress Avenue, Suite 1540
Austin, TX  78701
Telephone: 512.803.1578
Fax: 561.961.5684
aradbil@gdrlawfirm.com

/s/ *James L. Davidson*
James L. Davidson*
Attorney-in-Charge
Florida Bar No. 723371
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Tel: (561) 826-5477
Fax: (561) 961-5684
jdavidson@gdrlawfirm.com

*Counsel for Plaintiff and the proposed classes*

* to seek admission *pro hac vice*